GREGORY F. WISE and VEATRICE J. WISE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wise v. Commissioner
Docket No. 24693-84.
United States Tax Court
T.C. Memo 1987-113; 1987 Tax Ct. Memo LEXIS 109; 53 T.C.M. (CCH) 258; T.C.M. (RIA) 87113; February 24, 1987. *109 By 1980, a decorating business was commenced in the name of P, and on the returns filed by him and his wife for 1980 and 1981, he reported income and expenses of the business, showing a loss for each year. Such returns were examined by the IRS, and P continued to represent that the business belonged to him until the statute of limitations was about to expire, when he claimed that the business belonged to his father. Held, P failed to prove that he was not the owner of the business. Leonard Murray, for the petitioners. Julia M. Dewey, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined the following deficiencies in, and additions to, the petitioners' Federal income taxes: Additions to Tax
Sec. 6653(a)
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Year
Deficiency
I.R.C. 1954 [1]
I.R.C. 1954
I.R.C. 1954
1980
$5,880.09
$294.01
1981
4,225.92
$211.30
50% of interest
due on $4,225.92
After concessions, the only issue remaining for determination is whether the petitioner Gregory F. Wise was the owner of a business known as Greg's Decorating *110 Service. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioners, Gregory F. Wise and Veatrice J. Wise, husband and wife, resided in Chicago, Illinois, at the time the petition in this case was filed. They filed joint Federal income tax returns for 1980 and 1981 with the Internal Revenue Service Center, Kansas City, Missouri. During 1980 and 1981, Gregory F. Wise was employed full-time by the Chicago Housing Authority as a painter. He is a high school and trade school graduate, and he had, by 1980, acquired at least 8 years' experience as a painter. Veatrice Wise was employed by the United States Customs Service. Charles Wise, the father of Gregory F. Wise, had been in the painting and contracting business for some years. Since these facts involve two Messrs. Wise, we shall identify each by his first name. By late 1979, Charles had obtained a real estate broker's license and wished to change occupations. He proposed that Gregory use supplies and equipment remaining from Charles' painting and contracting business *111 and open a decorating service known as Greg's Decorating Service (GDS). Charles believed that his experience would be valuable to his son. Charles had a second son, Dean, and hoped that Gregory and Dean could eventually build a business together. An employer identification number was secured for GDS by Charles' accountant. Such identification number was reported on the returns filed by Gregory and his wife for 1980 and 1981; it was not reported on the returns filed by Charles for those years. GDS was commenced by 1980. A checking account in the name of GDS was maintained at South Shore National Bank, Chicago, Illinois, during the years in issue. The address on the account was the same as that of Gregory's residence. The individuals empowered to co-sign checks written on this account were Gregory, his sister, Charlene Wise, and Charles. Deposits to the account totaled $31,132.46 for 1980 and $16,314.70 for 1981. The withdrawals from such account were $31,735.79 for 1980 and $15,142.41 for 1981. Charles kept the records of GDS. He also prepared the checks. The signature of Charles appears on all but one check introduced in evidence. The signed name "Gregory Wise" appears *112 on every such check. Charles paid car payments, automobile insurance, life insurance, and church contributions from the GDS account, as well as the charges for paint supplies, stationary, equipment rental, and labor. Out of that account, Charles also made checks payable to himself in the amount of $9,015 in 1980 and $4,300 in 1981. Most of such checks were cashed by him; some were in payment for his labor. He also prepared checks payable to his wife in the amount of $5,050 in 1980 and $3,125 in 1981. Such checks were deposited in her account. In the Federal income tax returns filed by Gregory and his wife for 1980 and 1981, they reported the following income and expenses from GDS: 1980
1981
Gross receipts
$25,520
$7,041
Other income
Cost of goods sold
25,332
6,536
Deductions
car and truck
$ 1,260
330
depreciation
insurance
442
legal and professional
office supplies
rent
90
90
repairs
72
supplies
180
taxes
6
utilities
65
111
telephone
36
bad debts
Charles furnished an income summary to Gregory and his accountant for purposes of preparing the returns filed by Gregory and his wife. In March 1983, the IRS commenced *113 an examination of the returns filed by Gregory and his wife for 1980 and 1981. Initially, Gregory was represented by his accountant, and the accountant secured from Charles the additional information requested by the IRS. In July 1983, Gregory, together with his accountant, met with the examining agent. During the discussions between the accountant and the agent and during the conference which included Gregory in July 1983, no claim was made by Gregory or his accountant that GDS was not owned by Gregory. On January 17, 1984, there was another conference which included Gregory, his accountant, the agent, and Charles, and at that conference, Gregory, for the first time, took the position that GDS was not owned by him. On April 14, 1984, the petitioners filed an amended return for 1980 which reported $294.45 in wages as the income they received from GDS. Copies of the returns filed by Charles for 1980 and 1981 were made available to the examining agent, but there was no formal examination of such returns. Such returns reported the following business income and expenses: 1980
1981
Gross receipts
$49,701
$7,668
Other income
3,380
5,832
Cost of goods sold
33,513
4,020
Deductions
car and truck
3,663
1,744
depreciation
1,575
1,574
insurance
1,091
interest
344
legal & professional
508
90
office supplies
114
rent
utilities and telephone
98
197
licenses
50
bad debts
7,044
miscellaneous
125
*114 The Commissioner recomputed the income of Gregory and his wife by use of the bank deposits method in which he treated the GDS account as owned by Gregory. In his notice of deficiency, the Commissioner increased the income reportable by Gregory and his wife for both 1980 and 1981, reduced the "cost of sales," and disallowed certain other deductions. He also determined that they were liable for the additions to tax for negligence under section 6653(a) for 1980 and under section 6653(a)(1) and (2) for 1981. OPINION The petitioners do not dispute the accuracy of the adjustments made by the Commissioner; their primary contention is that GDS was owned and operated by Charles and that all the income and expenses of such business are attributable to Charles. Thus, the primary issue for our decision is whether Gregory was in fact the owner of GDS in 1980 and 1981. The Commissioner's determination is presumed correct. . The petitioners have the burden of producing "enough evidence to support a finding contrary to the Commissioner's *115 determination" and must show the merits of their claim by a preponderance of the evidence. , affg. a Memorandum Opinion of this Court. The failure of a party to introduce evidence within his possession gives rise to the presumption that if produced the evidence would be unfavorable. , affd. . Income is taxable to the one who earns it. ; . Thus, we must decide which person actually controls the earning of the income. ; . Control of earnings is determined by an examination of all the surrounding facts and circumstances. ;. *116 In examining the surrounding facts and circumstances, we have looked beyond evidence of form in search of substantive dominion and control. For example, in , the Court looked to see who provided the capital for the business and who managed it. The Court sustained the Commissioner's determination that the business was owned by the taxpayer-husband and observed that "the income in question was essentially created by the use of * * * [the wife's business] assets in conjunction with talents, skill, experience, and organization originating with and controlled by the petitioner." . In , we held that a taxpayer was not taxable on the income from an interest in a partnership because he had no control over that interest. The Court said: it was really the father, through his capital, his business connections, his services, all placed at the disposal of [the son's partnership] * * * who produced the partnership income. * * * [.] Similarly, in , *117 we held that the taxpayer was not taxable on damages received for breach of a contract to purchase stock. We found that the taxpayer managed the stock but that his sister was the real owner of it. Initially, we consider that GDS bore Gregory's name. Such fact does not, alone, conclusively establish that he was the owner of the business and taxable on its income. . However, it is some evidence of ownership, and here, we have more. When Gregory and his wife filed their tax returns for 1980 and 1981, they treated GDS as their business. They reported the employer identification number which had been assigned to it, and they reported what purported to be the income and expenses of the business. Their returns showed that they sustained losses from the business during those years. After the IRS commenced an examination of such returns, they continued to treat the business as belonging to them. In the initial conferences, Gregory was represented by his accountant, who believed that Gregory was the owner of GDS, and when Gregory personally participated in a conference, he acknowledged that he had been in business *118 since 1980. Not until it appeared that Gregory and his wife would be taxable on income from the business, and not until January 1984, 3 months before the statute of limitations for 1980 was to expire, did Gregory assert that he was not the owner of GDS. The fact that Gregory held himself out to be the owner of GDS when he and his wife filed the returns and during 9 months of the examination provides strong evidence that he was the owner of such business, and the evidence presented by the petitioners is ambiguous. The petitioners argue that Gregory was a full-time employee of the city and that he lacked business experience. It does appear that Charles kept the books and records for GDS in 1980 and 1981; yet, he was interested in assisting his son, and since he had more experience in such matters, he may have merely rendered that service as an assistance to Gregory in starting a new business. Also, Gregory may have continued working for the Housing Authority merely because the success of a new business is speculative. The petitioners also contend that Charles prepared and executed all the checks drawn on the GDS account and thereby controlled the flow of funds in the business. *119 All but one of the checks offered in evidence was signed by Charles, but we do not accept the petitioners' contention that Charles signed Gregory's name on the checks. One of the checks bore only the name of Gregory. At trial, Gregory admitted that he had signed one of the checks, and that signature appears to be similar to the signatures on the other checks. Moreover, on 10 of the checks, different ink was used to write Gregory's name from that used to prepare the check and to sign Charles' name. In view of these circumstances, we are not convinced that Gregory did not sign the checks and did not participate in the control of the checking account. Charles appeared as a witness at trial, and he was asked about the checks made payable to him. His explanation was that he often borrowed money to use in the business of GDS and that he later withdrew funds to repay such loans. However, there was no explanation of why the checks were cashed: the checks allegedly paid to Charles' wife as repayment for loans were in fact deposited by her, but most of the checks allegedly made to Charles in repayment of loans were in fact cashed. In addition, a relatively large portion of the funds *120 in the GDS account were withdrawn in this manner, and since the checks were cashed, there are no records as to what happened to such funds. In his testimony, Charles claimed that he was the owner of GDS. However, he admitted that he furnished information concerning the income and expenses of GDS to Gregory's accountant to be used in preparing the tax returns for Gregory and his wife. Thus, it appears that Charles was aware that Gregory was reporting the income and expenses of GDS. Moreover, from an examination of the returns filed by Charles for 1980 and 1981, it is impossible to verify Charles' claim that he reported the income and expenses of GDS. He did not report the employer identification number of GDS, and we cannot determine whether the income reported by him included any income from GDS or whether the expenses claimed by him included any of those of GDS. At trial, Charles produced what he claimed to be a general ledger for 3 months to support his claim. The Commissioner's attorney examined Charles concerning the contents of such document, and although the testimony was inconclusive, the Commissioner's attorney offered the document. However, Gregory's attorney objected *121 to the admission of such document, and the Commissioner's attorney thereupon withdrew her offer. Finally, the petitioners presented only the testimony of Gregory and Charles; they did not produce any objective evidence to support their contention. For example, they did not produce the signature card for the GDS account or any other evidence that would tend to support their claim that Gregory had not signed the checks. Nor did they produce the testimony of any employees or customers of the business who could testify concerning the operation and management of GDS. The testimony given by Gregory and Charles was confusing and not convincing. Under the circumstances, we conclude and hold that the petitioners have failed to carry their burden of proving that Gregory was not the owner of GDS in 1980 and 1981. The petitioners argue in the alternative that GDS was a partnership with Gregory having only a fractional share in the business. There is absolutely no persuasive evidence in the record to support this contention, and consequently, we reject it. The Commissioner has also determined that the petitioners are liable for the additions to tax for negligence under section 6653(a) *122 for 1980 and under section 6653(a)(1) and (2) for 1981. The petitioners brought no evidence to contest the additions. Failure to produce evidence of lack of negligence is enough to sustain the imposition of the addition. ; . Furthermore, a lack of method, organization, and supporting records characterizes the petitioners' bookkeeping methods. Such shortcomings also justify imposition of the additions. . Consequently, the additions to tax are sustained. Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue.↩